**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF LOUISIANA**
**LAFAYETTE DIVISION**

| | |
|---|---|
| STATE OF LOUISIANA, | Case No. 6:25-cv-001126-DCJ-DJA |
| Plaintiff, | |
| vs. | Judge David C. Joseph |
| CAREMARKPCS HEALTH, LLC, CVS HEALTH CORP., and ZINC HEALTH SERVICES, LLC, | Magistrate Judge David J. Ayo |
| Defendants. | |

### MEMORANDUM OF CAREMARKPCS HEALTH, L.L.C. IN OPPOSITION TO MOTION TO REMAND

# TABLE OF CONTENTS

INTRODUCTION ........................................................................................................... 1

BACKGROUND ........................................................................................................... 2

PROCEDURAL HISTORY ........................................................................................... 4

LEGAL STANDARD ................................................................................................... 5

ARGUMENT ................................................................................................................ 6

I.    CAREMARK SATISFIED THE REQUIREMENTS FOR REMOVAL UNDER
      SECTION 1442(a)(1) ........................................................................................ 6

      A.    Caremark Is a Person Within the Meaning of the Statute ...................... 6

      B.    Caremark Acts Under the Direction of a Federal Officer When It Negotiates
            Rebates for FEHBA Plans. .................................................................... 7

      C.    The State's Claims Are Related to Caremark's Federal Duties ............ 13

      D.    Caremark Has a Colorable Federal Defense. ....................................... 16

II.   THE STATE'S PURPORTED DISCLAIMER IS INEFFECTIVE. ................ 19

III.  THE STATE'S SOVEREIGN STATUS DOES NOT CREATE AN EXCEPTION TO
      SECTION 1442(a)(1) ...................................................................................... 22

      A.    The State's *Parens Patriae* Status Does Not Justify Remand. ............. 22

      B.    The State Is Not Entitled to Sovereign Immunity Here. ...................... 24

CONCLUSION ........................................................................................................... 25

# TABLE OF AUTHORITIES

Page(s)

<u>**Cases**</u>

*Aetna Health Inc. v. Davila*,
542 U.S. 200 (2004) ............................................................................... 18

*Am. Fed'n of Gov't Emps., AFL-CIO v. Devine*,
525 F. Supp. 250 (D.D.C. 1981) ............................................................. 9

*Ames v. Kansas*,
111 U.S. 449 (1884) ........................................................................ 24, 25

*Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fl., Inc.*,
2005 WL 6717869 (11th Cir. Mar. 18, 2005) ......................................... 8

*Arizona v. Manypenny*,
451 U.S. 232 (1981) ............................................................................ 5, 6

*Arizona v. U.S.*,
567 U.S. 387 (2012) ............................................................................. 17

*Attorney Gen. of the State of New Jersey v. The Dow Chem. Co.*,
140 F.4th 115 (3d Cir. 2025) ................................................................ 15

*Bell v. Thornburg*,
743 F.3d 84 (5th Cir. 2014) .................................................................. 11

*Boudreaux v. Bossier*,
2019 WL 11235896 (E.D. La. Oct. 25, 2019) ...................................... 19

*BP P.L.C. v. Mayor & City Council of Balt.*,
593 U.S. 230 (2021) ............................................................................... 2

*Butler v. Coast Elec. Power Ass'n*,
926 F.3d 190 (5th Cir. 2019) ................................................................. 7

*California ex rel. Lockyer v. Dynegy, Inc.*,
375 F.3d 831 (9th Cir. 2004) ............................................................... 25

*California v. CaremarkPCS Health LLC*,
2024 WL 3770326 (9th Cir. Aug. 13, 2024) ........................... 1, 14, 20, 21

*California v. Steelcase, Inc.*,
792 F. Supp. 84 (C.D. Cal. 1992) ........................................................ 25

*Caris MPI, Inc. v. UnitedHealthcare, Inc.*,
    108 F.4th 340 (5th Cir. 2024) ................................................................... *passim*

*City of Annapolis v. BP P.L.C.*,
    2022 WL 4548226 (D. Md. Sept. 29, 2022) ...................................................... 11, 12

*Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*,
    996 F.3d 243 (4th Cir. 2021) ......................................................................... 8

*Coventry Health Care of Missouri, Inc. v. Nevils*,
    581 U.S. 87 (2017)........................................................................... 2, 17, 19

*Doe v. BJC Health Sys.*,
    89 F.4th 1037 (8th Cir. 2023) ...................................................................... 11

*Dougherty v. A O Smith Corp.*,
    2014 WL 3542243 (D. Del. July 16, 2014) ....................................................... 20

*Empire Healthchoice Assurance, Inc. v. McVeigh*,
    547 U.S. 677 (2006)................................................................................. 17

*Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*,
    865 F.3d 1237 (9th Cir. 2017) ..................................................................... 7, 8

*Gov't of Puerto Rico v. Express Scripts, Inc.*,
    119 F.4th 174 (1st Cir. 2024)................................................................. *passim*

*Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*,
    2025 WL 1218598 (D. Haw. Apr. 28, 2025) ............................................. 15, 16, 22

*Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*,
    2021 WL 5194662 (S.D. Ohio Nov. 8, 2021)...................................................... 22

*Hines v. Davidowitz*,
    312 U.S. 52 (1940).................................................................................. 17

*Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*,
    625 F.2d 22 (5th Cir. 1980) ....................................................................... 24

*Illinois v. Milwaukee*,
    406 U.S. 91 (1972)................................................................................. 24

*In re Flonase Antitrust Litig.*,
    879 F.3d 61 (3d Cir. 2017)......................................................................... 24

*In re Insulin Pricing Litig.*,
    2025 WL 1576940 (D.N.J. June 4, 2025).................................................... *passim*

*In re Katrina Canal Litig. Breaches*,
    524 F.3d 700 (5th Cir. 2008) ........................................................ 24

*In re MTBE*,
    488 F.3d 112 (2d Cir. 2007)......................................................... 25

*In re Oil Spill by Oil Rig Deepwater Horizon*,
    747 F. Supp. 2d 704 (E.D. La. 2010)............................................ 25

*Jacks v. Meridian Res. Co., LLC*,
    701 F.3d 1224 (8th Cir. 2012) ............................................. 2, 8, 13

*Jefferson Cnty. v. Acker*,
    527 U.S. 423 (1999)................................................................. 6, 18

*Latiolais v. Huntington Ingalls, Inc.*,
    951 F.3d 286 (5th Cir. 2020) ............................................... *passim*

*Louisiana ex rel. Caldwell v. Allstate Ins. Co.*,
    536 F.3d 418 (5th Cir. 2008) ............................................... 22, 24

*Louisiana v. Sparks*,
    978 F.2d 226 (5th Cir. 1991) ......................................................... 6

*Maryland v. 3M Co.*,
    130 F.4th 380 (4th Cir. 2025) ..................................................... 22

*Maryland v. Soper*,
    270 U.S. 9 (1926)......................................................................... 15

*Mesa v. California*,
    489 U.S. 121 (1989)..................................................................... 15

*Mississippi v. Optum, Inc.*,
    2025 WL 1622390 (S.D. Miss. June 9, 2025) ..................... 19, 20, 22

*Mitchell v. Advanced HCS, L.L.C.*,
    28 F.4th 580 (5th Cir. 2022) ....................................................... 11

*Moore ex rel. Mississippi v. Abbott Laboratories, Inc.*,
    900 F. Supp. 26 (S.D. Miss. 1995)............................................... 25

*Nat'l Bank v. Anderson*,
    539 U.S. 1 (2003)......................................................................... 18

*Neal v. Ameron Int'l Corp.*,
    495 F. Supp. 3d 375 (M.D. La. 2020)................................. 6, 18, 19

*Nevada v. Optum, Inc.*,
   2025 WL 947041 (D. Nev. Mar. 30, 2025) ...................................................... 15, 21

*Ohio ex rel. Yost v. Ascent Health Servs. LLC*,
   2024 WL 23187 (S.D. Ohio Jan. 2, 2024) ............................................................ 21

*Osborn v. Haley*,
   549 U.S. 225 (2007) .......................................................................................... 6

*Plaquemines Parish v. Chevron USA, Inc.*,
   2022 WL 9914869 (5th Cir. Oct. 17, 2022) ........................................................ 11

*Rutledge v. Pharm. Care Mgmt. Ass'n*,
   592 U.S. 80 (2020) ............................................................................................ 18

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co. ("St. Charles I")*,
   935 F.3d 352 (5th Cir. 2019) ..................................................................... *passim*

*St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co. ("St. Charles II")*,
   990 F.3d 447 (5th Cir. 2021) ..................................................................... *passim*

*Tennessee v. Davis*,
   100 U.S. 257 (1879) .......................................................................................... 25

*Texas v. Kleinert*,
   855 F.3d 305 (5th Cir. 2017) ..................................................................... *passim*

*Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*,
   2023 WL 2573914 (5th Cir. Mar. 20, 2023) .................................................. 10, 11

*United States v. Texas*,
   97 F.4th 268 (5th Cir. 2024) .............................................................................. 17

*Virginia ex rel. Kilgore v. Bulgartabac Holding Grp.*,
   360 F. Supp. 2d 791 (E.D. Va. Mar. 3, 2005) ..................................................... 25

*Wages & White Lion Inv., L.L.C. v. FDA*,
   16 F.4th 1130 (5th Cir. 2021) ............................................................................ 16

*Walker v. Motorola Mobility LLC*,
   670 F. Supp. 3d 387 (W.D. La. 2023) ................................................................ 17

*Watson v. Philip Morris Cos., Inc.*,
   551 U.S. 142 (2007) .................................................................................. *passim*

*West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*,
   140 F.4th 188 (4th Cir. 2025) ................................................................... *passim*

*Williams v. Lockheed Martin Corp.*,
    990 F.3d 852 (5th Cir. 2021) .................................................................. 11

*Winters v. Diamond Shamrock Chem. Co.*,
    149 F.3d 387 (5th Cir. 1998) .................................................................. 13

*Zeringue v. Crane Co.*,
    846 F.3d 785 (5th Cir. 2017) .................................................................... 8

## **Constitution, Statutes, and Regulations**

48 C.F.R. § 1602.170-16 ......................................................................... 3, 9

48 C.F.R. § 1604.7201 ................................................................................ 3

48 C.F.R. § 1604.7202 ................................................................................ 3

48 C.F.R. § 1646.201(d) .............................................................................. 3

48 C.F.R. § 1652.204-74 ............................................................................. 3

1 U.S.C. § 1 ................................................................................................ 7

5 U.S.C. § 8902 ........................................................................ 2, 16, 17, 18

28 U.S.C. § 1442 .............................................................................. *passim*

29 U.S.C. § 1144 ...................................................................................... 18

La. R.S. § 51:1401, *et seq.* ........................................................................ 5

Pub. L. No. 112-51, 125 Stat. 545 ............................................................ 13

U.S. CONST. amend XI ............................................................................ 24

## INTRODUCTION

Jurisdiction based on federal officer removal is appropriate because the State of Louisiana ("State") challenges conduct and seeks relief that run headlong into the work CaremarkPCS Health, L.L.C. ("Caremark") performs under the direction and supervision of a federal agency, the Office of Personnel Management ("OPM"), to help administer benefits to federal government employees pursuant to the Federal Employees Health Benefits Act, or "FEHBA." The Fifth Circuit has joined multiple other circuits in holding that entities administering FEHBA plans are entitled to federal officer removal. *See St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co. ("St. Charles I")*, 935 F.3d 352 (5th Cir. 2019). And, though not addressed by the State, the First Circuit, Fourth Circuit, and the district court overseeing hundreds of similar suits in a multidistrict litigation ("MDL Court") have held that removal is proper in materially indistinguishable cases challenging Caremark's rebate negotiations.[1]

Caremark is a pharmacy benefit manager ("PBM"). Health plan sponsors contract with Caremark and other PBMs for a range of valuable services, including negotiating with pharmaceutical manufacturers for rebates to reduce the net cost of prescription drugs. Caremark negotiates rebates simultaneously for many clients, including sponsors of plans that provide benefits to federal government employees pursuant to FEHBA. Under FEHBA, federal regulators explicitly authorize PBMs to negotiate rebates on behalf of sponsors of FEHBA plans ("FEHBA Carriers"), impose contractual obligations on PBMs regarding the rebates, and maintain authority to oversee and audit PBMs' rebating practices.

The State's lawsuit challenges Caremark's federally overseen rebate negotiations. The

---

[1] *See Gov't of Puerto Rico v. Express Scripts, Inc.*, 119 F.4th 174, 190 (1st Cir. 2024); *West Virginia ex rel. Hunt v. CaremarkPCS Health, L.L.C.*, 140 F.4th 188, 197 (4th Cir. 2025); *In re Insulin Pricing Litig.*, 2025 WL 1576940 (D.N.J. June 4, 2025); *see also California v. CaremarkPCS Health LLC*, 2024 WL 3770326 (9th Cir. Aug. 13, 2024) (reversing remand order).

State alleges that Caremark's negotiations with prescription drug manufacturers—including negotiations for rebates passed through to FEHBA plans—are, in reality, an "oligopoly feedback loop," Dkt. 1-1 ("Am. Pet.") ¶ 34, that increases prescription drug prices. Based on that course of conduct, the State seeks restitution for alleged overpayments and to enjoin Caremark from "[o]bfuscating or otherwise manipulating prices and payments for prescription drugs." *Id.* ¶¶ 52–53. As explained below, these are the same types of claims that the Fifth Circuit and other courts cited above make clear can appropriately be removed to federal court by Caremark.

## BACKGROUND

OPM administers federal employment functions and provides federal employment benefits pursuant to FEHBA, which "establishes a comprehensive program of health insurance for federal employees." *Coventry Health Care of Missouri, Inc. v. Nevils*, 581 U.S. 87, 91 (2017) (citation omitted). Congress's purpose in enacting FEHBA "was to establish a health benefits program for federal employees, so as to compete for the best talent along with private companies." *Jacks v. Meridian Res. Co., LLC*, 701 F.3d 1224, 1232 (8th Cir. 2012), *abrogated on other grounds by BP P.L.C. v. Mayor & City Council of Balt.*, 593 U.S. 230 (2021). According to FEHBA's sponsors, the program provides "material assistance in improving the competitive position of the Government" and is instrumental in retaining a quality civil service. *Id.* at 1232–33 (quoting H.R. Rep. No. 86-957, at 2 (1959); 1959 U.S.C.C.A.N. 2913, 2914).

To achieve these goals, FEHBA "assigns to OPM broad administrative and rulemaking authority over the program," *Coventry*, 581 U.S. at 91 (citing 5 U.S.C. §§ 8901–8913), and authorizes OPM to contract with FEHBA Carriers for federal employees' health insurance, 5 U.S.C. § 8902(a). Prescription drug coverage is one of the essential health benefits that FEHBA Carriers must provide to federal employees. *See* OPM, *Consol. Pharm. Benefits Guidance for the FEHB Program* (2025), https://www.opm.gov/healthcare-insurance/carriers/fehb/2025/2025-

07.pdf. OPM expressly contemplates that FEHBA Carriers will employ PBMs, like Caremark, to administer that component of the benefits. *E.g.*, 48 C.F.R. § 1602.170-16.

Although OPM does not directly contract with PBMs, it has promulgated the Federal Employee Health Benefits Acquisition Regulation ("FEHBAR"), which gives OPM direct oversight of FEHBA Carriers and their subcontractors. *See, e.g.*, *id.* OPM's contracts with FEHBA Carriers, for example, must include clauses giving OPM authority to review and audit subcontractors. *See, e.g.* 48 C.F.R. §§ 1604.7201, 1604.7202, 1652.204-74. OPM must exercise that authority to "periodically audit" subcontractors' books and records. 48 C.F.R. § 1646.201(d).

Consistent with these requirements, OPM's standard contract with FEHBA Carriers contains provisions addressing PBMs. *See* Dkt. 1-3, OPM, *Fed. Emps. Health Benefits Program Standard Contract for Experience-Rated Health Maint. Org. Carriers* (2019) ("FEHB Standard Contract"). The FEHB Standard Contract recognizes that PBMs will obtain "Manufacturer Payments," including rebates, on behalf of FEHBA Carriers. *Id.* at I-18. PBMs must "provide pass-through transparent pricing based on the PBM's cost for drugs … in which the [FEHBA] Carrier receives the value of the PBM's negotiated [rebates]." *Id.* Thus, PBMs must "credit to the Carrier either as a price reduction or by cash refund the value all [rebates] properly allocated to the Carrier." *Id.* PBMs also must provide FEHBA Carriers quarterly and annual Manufacturer Payment Reports that include data across the PBMs' entire client base. *Id.* Subject to these requirements, rebates negotiated by Caremark and credited to FEHBA Carriers reduce the federal government's FEHBA-related cost of medicine. *See* Decl. of Michael Perry ("Perry Decl.") ¶ 8.

OPM also retains authority to exercise direct oversight of PBM activities, including Manufacturer Payments of administrative fees and rebates in exchange for formulary placement—*i.e.*, the rebates and fees challenged by the State. For instance, OPM has the ability to "review and

receive any information and/or documents the [FEHBA] Carrier receives from the PBM, including a copy of its contract with the PBM." FEHB Standard Contract at I-19. OPM's Office of Inspector General ("OIG") may audit PBMs, and, on request, PBMs must give OIG records regarding their contracts with pharmacies, manufacturers, and third parties. *Id.*

Caremark contracts with multiple FEHBA Carriers to administer the pharmacy benefit component of FEHBA plans, including the Blue Cross and Blue Shield Association Federal Employee Program, the Government Employees Health Association, the National Association of Letter Carriers, the National Rural Letter Carriers' Association, and the Mail Handlers Benefit Plan. Perry Decl. ¶ 3. Those FEHBA Carriers provide benefits to beneficiaries in Louisiana, including Louisiana residents who have purchased insulin and other prescription drugs. *Id.*

In that context, Caremark has been subject to the OPM requirements set forth above regarding disclosure and pass through of rebates to those plans. *See id.* ¶¶ 4–7. OPM has exercised its authority to conduct audits of Caremark's performance of PBM services, including auditing Caremark's rebating practices. *Id.* ¶ 7. As OPM contemplates, Caremark has entered into Rebate Agreements with pharmaceutical manufacturers requiring manufacturers to pay rebates to help offset FEHBA Carriers' drug costs. Decl. of Simon Zahn ("Zahn Decl.") ¶ 4. Caremark conducts rebate negotiations simultaneously on behalf of a large number of clients, including both FEHBA plans and non-FEHBA plans, to maximize Caremark's negotiating power and thereby obtain better rebates for Caremark's clients. *Id.* ¶ 5. For example, Caremark's insulin rebate negotiations frequently involve both FEHBA and non-FEHBA plans. *Id.* ¶ 6.

## PROCEDURAL HISTORY

The State's operative Amended Petition was filed on June 26, 2025, and alleges that Caremark's industry-wide rebate negotiations with prescription drug manufacturers are not hard-fought, arm's-length transactions, but rather part of an "oligopoly feedback loop," in which

manufacturers raise prescription drug prices to increase the size of the rebates flowing back to Caremark in exchange for preferential placements of their drugs on Caremark's formularies. Am. Pet. ¶¶ 26–36, 44. The State also alleges that "layers of opaque contracts and lack of audits allow CVS to retain rebate margins" that should be passed through to the payor or patient. *Id.* ¶ 36.

The State purports to assert a cause of action for violation of the Louisiana Unfair Trade Practices Act, La. R.S. § 51:1401, *et seq.*, or, alternatively, for unjust enrichment. Am. Pet. ¶¶ 43–50. The State seeks restitution, civil penalties, attorneys' fees and costs, and injunctive relief to, among other things, "prohibit Defendants from … [o]bfuscating or otherwise manipulating prices and payments made for prescription drugs." *Id.* ¶¶ 4, 50, 52–53. Caremark removed the action to this Court under the federal officer removal statute, 28 U.S.C. § 1442(a)(1). *See* Dkt. 1.

## LEGAL STANDARD

The federal officer removal statute permits any person "acting under" a federal officer who is sued "for or relating to any act under color of such office" to remove a case to federal court. 28 U.S.C. § 1442(a)(1). The Supreme Court has recognized that "the right of removal is absolute for conduct performed under color of federal office, and has insisted that the policy favoring removal should not be frustrated by a narrow, grudging interpretation of § 1442(a)(1)." *Arizona v. Manypenny*, 451 U.S. 232, 242 (1981) (citation and internal quotation marks omitted).

In assessing the breadth of section 1442(a)(1), courts consider the statute's "basic purpose": "to protect the Federal Government from the interference with its 'operations'" that could result from litigation in hostile state courts. *Watson v. Philip Morris Cos., Inc.*, 551 U.S. 142, 148, 150 (2007) (citation omitted). The statute also seeks to protect against "state court proceedings [that] reflect local prejudice" against federal programs and policies. *Id.* at 150. Thus, "[f]ederal officer removal under 28 U.S.C. § 1442 is unlike other removal doctrines: it is not narrow or limited." *Caris MPI, Inc. v. UnitedHealthcare, Inc.*, 108 F.4th 340, 345 (5th Cir. 2024) (quoting *St. Charles*

5

*Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co. ("St. Charles II")*, 990 F.3d 447, 450 (5th Cir. 2021)). Courts must, therefore, assess jurisdiction "without a thumb on the remand side of the scale." *St. Charles II*, 990 F.3d at 450 (quoting *Latiolais v. Huntington Ingalls, Inc.*, 951 F.3d 286, 290 (5th Cir. 2020)); *accord Neal v. Ameron Int'l Corp.*, 495 F. Supp. 3d 375, 382 (M.D. La. 2020) ("[T]he federal officer removal statute is liberally construed in favor of removal.").[2]

Section 1442(a)(1) requires a defendant to show that: (1) it is a "person" within the meaning of the statute; (2) it acted under the direction of a federal officer; (3) the charged conduct "is connected or associated" with an act pursuant to a federal officer's directions; and (4) it has asserted a colorable federal defense. *Latiolais*, 951 F.3d at 296. For purposes of determining whether these elements are satisfied, "the State's allegations do not control"; instead, the Court "must credit [the defendant's] theory of the case." *Texas v. Kleinert*, 855 F.3d 305, 312 (5th Cir. 2017) (quoting *Jefferson Cnty. v. Acker*, 527 U.S. 423, 432 (1999)). A dispute of fact requires removal because Caremark "should have the opportunity to present [its] version of the facts to a federal court." *Id.* (quoting *Osborn v. Haley*, 549 U.S. 225, 251 (2007)).

## ARGUMENT

## I.   CAREMARK SATISFIED THE REQUIREMENTS FOR REMOVAL UNDER SECTION 1442(a)(1).

### A.   Caremark Is a Person Within the Meaning of the Statute.

The State's assertion that Caremark "is not a 'person' for purposes of federal officer jurisdiction," Dkt. 23-1 at 8, is contrary to settled authority holding that a corporate entity, like

---

[2] The State incorrectly asserts that the liberal construction of section 1442(a)(1) is "limited to a narrow set of circumstances." Dkt. 23-1 at 14 (citing *Louisiana v. Sparks*, 978 F.2d 226 (5th Cir. 1991)). Since this dicta in *Sparks*, Congress amended section 1442(a) to make removal even more expansive (*see infra* Part I.C), and courts—including the Supreme Court and Fifth Circuit—have consistently urged avoidance of "a narrow, grudging interpretation of § 1442(a)(1)." *Latiolais*, 951 F.3d at 290; *Manypenny*, 451 U.S. at 242.

Caremark, qualifies as a person under section 1442(a)(1).[3] *See Butler v. Coast Elec. Power Ass'n*, 926 F.3d 190, 201 (5th Cir. 2019) (corporate entities are "persons" under §1442(a)); *Goncalves ex rel. Goncalves v. Rady Children's Hosp. San Diego*, 865 F.3d 1237, 1244 (9th Cir. 2017) ("The courts of appeals have uniformly held that corporations are 'person[s]' under § 1442(a)(1)."); *see also* 1 U.S.C. § 1; *Puerto Rico*, 119 F.4th at 184, n.4 (Caremark is a "person" under § 1442(a)(1)); *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *7 n.9 (same).

The State does not address any of this authority, nor does it cite a single case to support its assertion that Caremark is not a "person" under section 1442(a)(1). Rather, the State appears to confuse the statute's "person" requirement with the requirement to show that the defendant acted under the direction of a federal officer by arguing that Caremark was not "*the* person contracting with the federal government." *See* Dkt. 23-1 at 8 (citing "acting under" precedent). That argument is also wrong for the reasons discussed below in Part I.B.

### B.     Caremark Acts Under the Direction of a Federal Officer When It Negotiates Rebates for FEHBA Plans.

Caremark easily satisfies the "acting under" requirement for federal officer removal. The Supreme Court has "made clear" that "[t]he words 'acting under' are broad" and "must be liberally construed." *Watson*, 551 U.S. at 147 (citation modified). The removing defendant "need not prove that its 'conduct was precisely dictated by a federal officer's directive,'" but merely that "the federal officer exercises 'subjection, guidance, or control' over the removing party and that party is assisting or helping carry out a federal officer's duties." *Caris*, 108 F.4th at 347 (quoting first *St. Charles II*, 990 F.3d at 454, and then *Watson*, 551 U.S. at 151–52). "When a contractor helps the Government perform a job that, 'in the absence of a contract … , the Government would have had to perform,' and that relationship involves 'detailed regulation, monitoring, or supervision,'

---

[3] For documents filed on the Court's docket, pin citations are to the ECF-assigned page numbers.

the private contractor is 'acting under' a federal officer's direction." *Id.* (quoting *Watson*, 551 U.S. 153–54). "Direct oversight of the specific acts that give rise to a plaintiff's complaint is not required." *Zeringue v. Crane Co.*, 846 F.3d 785, 792 (5th Cir. 2017).

Applying these principles, the Fifth Circuit—along with the Eighth, Ninth, and Eleventh Circuits—has held that FEHBA Carriers, and other similar entities, qualify for federal officer removal because they help the government fulfill the basic task of implementing federal employee health benefits programs. *See St. Charles I*, 935 F.3d at 356; *Goncalves*, 865 F.3d at 1247; *Jacks*, 701 F.3d at 1233–34; *Anesthesiology Assocs. of Tallahassee v. Blue Cross Blue Shield of Fl., Inc.*, 2005 WL 6717869 at *2 (11th Cir. Mar. 18, 2005). The same is true for PBMs like Caremark that subcontract with FEHBA Carriers to help administer federal employee health benefits. As the First Circuit, Fourth Circuit, and MDL Court have all held in materially indistinguishable cases, Caremark's FEHBA rebate negotiations are acts "under" a federal officer because Caremark facilitates the government's provision of prescription drug benefits to FEHBA beneficiaries and is subject to significant government supervision and control. *Puerto Rico*, 119 F.4th at 190; *Hunt*, 140 F.4th at 197; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *10–11; *accord Cnty. Bd. of Arlington Cnty. v. Express Scripts Pharm., Inc.*, 996 F.3d 243, 253 (4th Cir. 2021) (holding PBMs act under the direction of a federal officer).

The First Circuit, for example, held that Caremark's "contractual obligations demonstrate that OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA Carriers, such that Caremark was acting under federal authority when it negotiated rebates." *Puerto Rico*, 119 F.4th at 190. Likewise, the Fourth Circuit held that Caremark acts under a federal officer because "OPM exerts some control over Caremark" and "reserves the right to monitor and supervise the otherwise private party," and "Caremark helps carry out OPM's

duties to administer health insurance under FEHBA." *Hunt*, 140 F.4th at 198 (citation modified). The MDL Court echoed those rulings, referring to Caremark as "a classic case in which a private corporation acts under a federal officer for purposes of removal." *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *10 (citations omitted).

Those decisions were clearly correct. The goal of the FEHBA is to provide government employees health benefits comparable to their private-sector counterparts. *Am. Fed'n of Gov't Emps., AFL-CIO v. Devine*, 525 F. Supp. 250, 252 (D.D.C. 1981). And OPM's contracts with FEHBA Carriers explicitly contemplate that the carriers providing benefits to federal employees will employ subcontractors (including PBMs like Caremark) to administer the pharmacy component of those benefits. *See* 48 C.F.R. § 1602.170-16.

By conducting rebate negotiations that lower the net cost of prescription drugs to plans, Caremark "help[s] [OPM] carry out" the task of providing competitive health benefits. *Caris*, 108 F.4th at 347. Thus, if Caremark did not negotiate rebates for the government, "the Government itself would have had to" negotiate the rebates—a telltale sign of activity under a federal officer. *Watson*, 551 U.S. at 153–54; *see also Puerto Rico*, 119 F.4th at 185–86 ("A private contractor that helps the Government to produce an item it needs and thus helps officers fulfill other basic governmental tasks may remove because it assists with a governmental function that the government itself would have had to perform." (citation modified)).

As for the government's involvement, "OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA carriers." *Puerto Rico*, 119 F.4th at 190. As detailed above, OPM oversees Caremark's administration of health benefits by determining everything from how Caremark must define, report, and identify Manufacturer Payments, including administrative fees and rebates offered in connection with formulary

placement; to how it must incorporate rebates into reported pricing; to the percentage of rebates it must pass on to federal clients (requiring 100% pass through); to the information it must provide to OPM upon request. *See supra* Background; FEHB Standard Contract at I-18 to I-19. The FEHB Standard Contract thus sets forth specific standards Caremark must follow, and subjects Caremark to "continued monitoring, oversight, and supervision by OPM over [Caremark's] performance of its PBM services … , including its practices regarding [rebates]." Perry Decl. ¶ 6.

Indeed, the standard OPM contract at issue in *St. Charles II* is nearly identical to the FEHBA Standard contract here. *Compare* FEHB Standard Contract at I-18 to I-19, *with St. Charles Surgical Hosp., L.L.C. v. La. Health Serv. & Indem. Co.*, No. 2:19-cv-13497 (E.D. La. Nov. 8, 2019), Dkt. 1-2, Ex. 2 at I-17 to I-18. The contractual obligations in the FEHB Standard Contract "go far beyond mere compliance with federal regulation" and "demonstrate OPM exercised detailed supervision and monitoring over Caremark's provision of PBM services to FEHBA carriers, such that Caremark was acting under federal authority when it negotiated rebates." *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *10 (quoting *Puerto Rico*, 119 F.4th at 190).

The State does not even acknowledge (much less address) any of the indistinguishable appellate and MDL holdings that Caremark acts under the direction of a federal officer when it carries out its duties under FEHBA contracts, and the State's attempts to argue otherwise fail.

*First*, the State argues that Caremark is not entitled to removal because it contracts with FEHBA Carriers rather than OPM and therefore does not have a "direct contractual relationship" with OPM. Dkt. 23-1 at 5, 9, 11. But as the Fourth Circuit recently explained in rejecting this very argument, "the absence of a direct contractual relationship with the federal government is not a bar to removing an action under § 1442(a)(1)." *Hunt*, 140 F.4th at 198 (citation omitted).[4]

---

[4] *See also, e.g.*, *Trinity Home Dialysis, Inc. v. WellMed Networks, Inc.*, 2023 WL 2573914, at *3–4 (5th Cir. Mar. 20, 2023) (endorsing *Arlington County* and holding that when a federal agency exercises sufficient

Moreover, contrary to what the State asserts, Caremark is not relying on its "mere status as subcontractor," Dkt. 23-1 at 9 (quoting *Plaquemines Parish v. Chevron USA, Inc.*, 2022 WL 9914869, at *3–4 (5th Cir. Oct. 17, 2022)), nor is Caremark seeking any "expansion" of federal-officer removal, *id.* (quoting *Mitchell v. Advanced HCS, L.L.C.*, 28 F.4th 580, 589–91 (5th Cir. 2022)). In accordance with Fifth Circuit precedent, including the very *Plaquemines* case cited by the State (Dkt. 23-1 at 9), Caremark has established that it satisfies the "acting under" element because it assists OPM's administration of federal health benefits "subject to the federal government's guidance and control." *See Plaquemines*, 2022 WL 9914869, at *3 (subcontractor would satisfy "acting under" element in these circumstances); *accord Trinity Home Dialysis*, 2023 WL 2573914, at *3–4 (federal subcontractor satisfied "acting under" requirement because, as here, federal contract "expressly contemplated the use of subcontractors" and "also *required* that [the federal agency] retain supervision and control over subcontractors").

*Second*, the decisions cited by the State that hold a party is not a federal officer simply because it is "subject to federal regulations" and is "compl[ying] … with federal laws," Dkt. 23-1 at 10–11, 13, are irrelevant. Caremark has not made these arguments. Rather, Caremark is entitled to removal because it is a private contractor that "assist[s], or … help[s] carry out, the duties or tasks of the federal superior." *Bell v. Thornburg*, 743 F.3d 84, 89 (5th Cir. 2014). Caremark performs this work subject to a federal contract—the "archetypal" acting-under relationship. *Williams v. Lockheed Martin Corp.*, 990 F.3d 852, 859 (5th Cir. 2021).

*Third*, citing *City of Annapolis v. BP P.L.C.*, 2022 WL 4548226 (D. Md. Sept. 29, 2022), the State argues "the fact that a private company acts under the direction of a federal officer at

---

oversight of the removing defendant, "[t]he fact that [the defendant] was a mere subcontractor and not in direct privity of contract with [the agency] does not undermine" its ability to remove); *Doe v. BJC Health Sys.*, 89 F.4th 1037, 1045 (8th Cir. 2023) (noting "[p]arties who act as government middlemen and deliver federal benefits to federal beneficiaries" typically satisfy the low bar for federal officer removal).

some point in its business with respect to federal contracts" is insufficient for federal officer jurisdiction. Dkt 23-1 at 11–12. *City of Annapolis*, which concerned a defendant's alleged "misrepresentation of the harms of fossil fuels" that were "not for or related to" the government's oil permits, 2022 WL 4548226, at *8, bears no resemblance to the facts here. Tellingly, the State ignores the Fourth Circuit's 2025 decision holding that Caremark acts under the direction of a federal officer when negotiating rebates. *Hunt*, 140 F.4th at 198.

*Finally*, the State argues that the *St. Charles* cases are distinguishable because those claims "arose directly from [defendant's] actions in administering health care benefits" while this action is "completely unrelated" to any OPM conduct. Dkt. 23-1 at 12 n.3. This argument conflates the "acting under" prong with the "connection" prong, which must be treated as "distinct" requirements. *See St. Charles II*, 990 F.3d at 454. Like the defendants in *St. Charles*, Caremark performs federal duties subject to the FEHB Standard Contract and OPM's oversight and control to assist OPM in providing health benefits to federal employees. *See* Perry Decl. ¶¶ 4–7; *see also Puerto Rico*, 119 F.4th at 190; *Hunt*, 140 F.4th at 198. That is sufficient.

The State's purported distinction also fails because the Amended Petition challenges the very conduct regulated by OPM: Caremark's negotiation of rebates in exchange for formulary placement and the extent to which Caremark passed through those rebates (as OPM requires). *Compare* Am. Pet. ¶¶ 33–36 *with* Perry Decl. ¶¶ 3–7. Thus, as in *St. Charles*, this lawsuit squarely concerns—and attempts to upend—Caremark's administration of health care benefits for federal employees. Courts have allowed removal for conduct further removed from core FEHBA benefits administration than this. For example, the Eighth Circuit held that a FEHBA Carrier "acted under" a federal officer when pursuing a subrogation claim related to benefits it had administered because "broadly speaking, the subrogation provision [was] necessarily a product of the benefit payment

process." *Jacks*, 701 F.3d at 1233. Here, Caremark's negotiating with manufacturers and passing rebates through to FEHBA Carriers is the core of Caremark's federal duties, and the very conduct the State alleges resulted in "injurious *list-price* manipulation." Dkt. 23-1 at 12 n.3.

### C.    The State's Claims Are Related to Caremark's Federal Duties.

This action relates to Caremark's federal conduct because the State claims that Caremark's rebate negotiations "create an oligopoly feedback loop" that results in "upward ratcheting of list prices" for prescription drugs, and the challenged rebate negotiations include negotiations that Caremark undertakes on behalf of FEHBA Carriers. Over time, "Congress has broadened the removal statute repeatedly until it reached" the current text. *Latiolais*, 951 F.3d at 290. Prior to its most recent amendment, the Fifth Circuit interpreted section 1442(a)(1) to require removing defendants to demonstrate that "a direct causal nexus exists between the defendants' actions taken under color of federal office and [the plaintiff's] claims." *Id.* at 291 (citing *Winters v. Diamond Shamrock Chem. Co.*, 149 F.3d 387, 399–400 (5th Cir. 1998)). In 2011, however, Congress amended section 1442(a)(1) so that a suit need only be "for or *relating to* any act under color of" federal office to justify removal. Pub. L. No. 112-51, 125 Stat. 545 (codified at 28 U.S.C. § 1442(a)(1)) (emphasis added). Under the 2011 amendments, removal is now proper so long as "the charged conduct is *connected or associated with* an act pursuant to a federal officer's directions." *Latiolais*, 951 F.3d at 296 (overruling "causal nexus" test) (emphasis added).

The State does not dispute that many of the Louisianans it alleges were harmed by Caremark's purported "scheme" were federal employees who received prescription drugs through FEHBA Carriers serviced by Caremark. *See, e.g.*, Dkt. 23-1 at 6, 14–15. Accordingly, the rebates that allegedly resulted in artificial increases in prescription drug prices include rebates that Caremark negotiated on behalf of FEHBA Carriers—rebates that ultimately were passed through to the FEHBA Carriers and effectively became federal funds. *See* Perry Decl. ¶¶ 5–8; *cf. St.*

*Charles I*, 935 F.3d at 356 (noting that OPM owns the insurance premiums paid to PBMs for FEHBA plans). And even without this direct connection to Louisiana federal employees, the State's lawsuit challenging rebate negotiations and other Manufacturer Payments has a sufficiently close relationship with Caremark's federal duties because Caremark's rebate negotiations are undertaken simultaneously on behalf of both FEHBA and non-FEHBA clients and thus indivisible as between federal and non-federal clients. *See* Perry Decl. ¶¶ 5–6. Thus, as the First Circuit, Fourth Circuit, and MDL Court have already held, Caremark's federal duties have a clear "connect[ion]" and "associat[ion]" with the State's claims, *Latiolais*, 951 F.3d at 296, because the State challenges Caremark's rebate practices performed on behalf of the federal government and pursuant to OPM's direction and control to help provide FEHBA benefits. *See Puerto Rico*, 119 F.4th at 190–92; *Hunt*, 140 F.4th at 199; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *12; *accord California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring).

Again, the State ignores this precedent. It argues there is "no overlap" between Caremark's federal conduct and the State's claims because the challenged conduct occurs "prior to" administration of the contracts. Dkt. 23-1 at 12 n.3, 15–16. That argument is contradicted by the State's own allegations that list prices increased *because of* the challenged administrative fees and rebates Caremark negotiated with Manufacturers: "CVS Caremark … demand[s] ever-larger rebates from manufacturers. … The result is upward ratcheting of list prices across the board to meet rebate demands." Am. Pet. ¶ 34. The challenged rebate negotiations were undertaken on behalf of Caremark's clients, including its FEHBA clients, pursuant to the terms of the client contracts. *See* Perry Decl. ¶ 8. And the negotiated rebates were passed through to FEHBA plans pursuant to OPM requirements. *Id.* ¶¶ 5, 8.

Even if manufacturer list prices are an "input" into certain calculations under Caremark's

14

FEHBA contracts, the contracts themselves address the negotiation process at the heart of the State's claims. *See supra*, Background; FEHB Standard Contract at I-18 to I-19. This case is thus far removed from the one cited by the State, *see* Dkt. 23-1 at 15, where the government merely purchased a chemical made by the defendant, which the defendant was under no obligation to produce and which it produced without government guidance or control. *See Attorney Gen. of the State of New Jersey v. The Dow Chem. Co.*, 140 F.4th 115, 122 (3d Cir. 2025). The other case the State cites, *Nevada v. Optum, Inc.*, 2025 WL 947041 (D. Nev. Mar. 30, 2025), is similarly inapposite because Nevada challenged the PBMs' alleged failure to monitor and report diversion of opioids in accordance with the PBM's obligations under state law, *id.* at *2, not, as here, conduct undertaken on behalf of the federal government and subject to OPM control and oversight.

The State's reliance (Dkt. 23-1 at 16–17) on *Mesa v. California*, 489 U.S. 121 (1989), and *Maryland v. Soper*, 270 U.S. 9 (1926), is likewise misplaced, because both cases preceded the 2011 amendment expanding the scope of section 1442(a)(1) to include any conduct "relating to" an act under color of federal office. Moreover, *Mesa* concerned only whether a federal officer must raise a colorable federal defense, which Caremark has done, as discussed below. The State's related suggestion that removal is only appropriate when the "defendant's act was ordered or demanded by federal authority," Dkt. 23-1 at 16, likewise ignores the 2011 amendment, as well as subsequent precedent making clear that the removing defendant "need not prove that its 'conduct was precisely dictated by a federal officer's directive.'" *Caris*, 108 F.4th at 347 (citation omitted).

Finally, the decision in *Hawai'i ex rel. Lopez v. CaremarkPCS Health, L.L.C.*, 2025 WL 1218598 (D. Haw. Apr. 28, 2025), *appeal filed*, No. 25-3102 (9th Cir. May 14, 2025), does not aid the State. (The State cites this decision for a different point, discussed *infra* at Part II.) In *Hawai'i*, the district court declined to follow the First Circuit's decision in *Puerto Rico*, discussed above,

based on an assumption that the Ninth Circuit applies a "causal nexus" test that is more demanding than the "connected or associated with" test used by other circuits, including the Fifth Circuit. *See Hawai'i*, 2025 WL 1218598, at *4 ("[T]he Court will not apply out-of-circuit case law applying the connected or associated with standard in the federal officer removal jurisdiction analysis here."). While *Hawai'i* misconstrued the Ninth Circuit's "causal nexus" test, which presumably will be addressed on appeal in that case, its reasoning has no bearing here, where the Fifth Circuit's "connected or associated" test governs. *See Latiolais*, 951 F.3d at 296.

### D. Caremark Has a Colorable Federal Defense.

There is a low bar for asserting a colorable federal defense. "Colorable" means "plausible, not 'clearly sustainable.'" *Kleinert*, 855 F.3d at 313. A defendant is not required "to win [its] case before [it] can have [the case] removed." *Caris*, 108 F.4th at 346 (quoting *Latiolais*, 951 F.3d at 296). "Instead, an asserted federal defense is colorable unless it is 'immaterial and made solely for the purpose of obtaining jurisdiction' or 'wholly insubstantial and frivolous.'" *Id.* (quoting *Latiolais*, 951 F.3d at 297). The State has forfeited any challenge to this prong of the test for federal officer removal by failing to contest it. *See Wages & White Lion Inv., L.L.C. v. FDA*, 16 F.4th 1130, 1142–43 (5th Cir. 2021).

Caremark's preemption defense is at least "colorable," as already explained by the First Circuit, Fourth Circuit, and MDL Court. *Puerto Rico*, 119 F.4th at 190; *Hunt*, 140 F.4th at 198–99; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *13–14. FEHBA contains an expansive express preemption provision providing that "[t]he terms of any contract under this chapter which relate to the nature, provision, or extent of coverage or benefits (including payments with respect to benefits) shall supersede and preempt any State or local law, or any regulation issued thereunder, which relates to health insurance or plans." 5 U.S.C. § 8902(m)(1). As the Supreme Court held, the term "relate to" must be given an expansive definition in this preemption provision because

16

"FEHBA concerns benefits from a federal health insurance plan for federal employees that arise from a federal law in an area with a long history of federal involvement." *Nevils*, 581 U.S. at 96 (citation modified). Thus, as the Fifth Circuit has recognized, FEHBA contracts "displac[e] state law on issues relating to coverage or benefits afforded by health-care plans." *St. Charles I*, 935 F.3d at 357 (quoting *Empire Healthchoice Assurance, Inc. v. McVeigh*, 547 U.S. 677, 683 (2006)).

The FEHB Standard Contract has preemptive force because it "relate[s] to the nature, provision, or extent of coverage or benefits." 5 U.S.C. § 8902(m)(1). The State does not dispute that the FEHB Standard Contract contemplates Caremark's negotiation for rebates and governs Caremark's conduct while carrying out those duties. Caremark therefore has a colorable defense that the contract preempts the State's claims. *See Puerto Rico*, 119 F.4th at 190; *Hunt*, 140 F.4th at 198–99; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *13–14; *see also St. Charles I*, 935 F.3d at 357 (holding substantially similar FEHB contract is entitled to preemptive effect).

Caremark also has a colorable obstacle preemption defense because this lawsuit "stands as an obstacle to the accomplishment and execution" of Caremark's ability to obtain rebates for FEHBA Carriers. *See Arizona v. U.S.*, 567 U.S. 387, 406 (2012) (quoting *Hines v. Davidowitz*, 312 U.S. 52, 67 (1940)); *United States v. Texas*, 97 F.4th 268, 288 (5th Cir. 2024); *Walker v. Motorola Mobility LLC*, 670 F. Supp. 3d 387, 398–401 (W.D. La. 2023) (holding LUTPA claim was preempted because it was premised on an attack of FCC-regulated conduct). This action undermines a central purpose of FEHBA because it will make it more difficult for FEHBA Carriers to provide competitive health benefits. *See Nevils*, 581 U.S. at 96; Perry Decl. ¶ 8.

Instead of contesting whether the preemption defense is "colorable," the State argues there is no federal question presented by the "well-pleaded complaint," and FEHBA would not "independently support Article III 'arising under' jurisdiction" because it is raised via a defense

and does not provide a cause of action. Dkt. 23-1 at 17–20. The State's arguments are without merit because, as the State acknowledges, *id.* at 17, section 1442(a)(1) is an "*exception* to the usual 'well-pleaded complaint' rule" that provides federal jurisdiction where (as here) a *defense* to a complaint presents a *federal question. Kleinert*, 855 F.3d at 311; *see also Neal*, 495 F. Supp. 3d at 392 ("[T]he well-pleaded complaint rule does not apply to the federal officer removal statute.").

The State also argues that FEHBA does not provide a basis for "complete preemption." Dkt. 23-1 at 18. Complete preemption is an entirely separate doctrine, unrelated to section 1442(a)(1), that provides a *further* exception to the well-pleaded complaint rule. *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207–08 (2004) (quoting *Ben. Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003)). Caremark has never sought removal based on complete preemption.[5]

The State also seemingly attempts to litigate the ultimate merits of Caremark's preemption defense. *See* Dkt. 23-1 at 18 & n.6. That is improper. Section 1442(a)(1) "does not require a federal official or person acting under him 'to win his case before he can have it removed.'" *Latiolais*, 951 F.3d at 296–97 (quoting *Acker*, 527 U.S. at 431). In any event, the State's argument only highlights that Caremark's defense is colorable. The State relies exclusively on *Rutledge v. Pharmaceutical Care Management Association*, 592 U.S. 80 (2020), which did not involve federal officer removal and did not even discuss FEHBA. *Rutledge* addressed preemption based on ERISA, a different statute with a narrower preemption clause that preempts only state laws that "relate to any employee benefit plan *covered by ERISA*." *Id.* at 479 (quoting 29 U.S.C. § 1144(a)) (emphasis added). In contrast, FEHBA preempts any state law "which relates to health insurance or plans," full stop. 5 U.S.C. § 8902(m)(1). The Supreme Court has interpreted this provision broadly. *See*

---

[5] The State's footnote addressing "conflict" preemption (Dkt. 23-1 at 22 n.11) is likewise irrelevant because that is not a quote from Caremark, and Caremark did not seek removal based on conflict preemption. The quote seems to be a remnant from a remand motion the State filed in a separate case against Express Scripts. *See Louisiana v. Sanofi-Aventis*, No. 2:23-cv-22978, Dkt. 24-2 at 15 n.11 (M.D. La. May 19, 2023).

*Nevils*, 581 U.S. at 95–96. If the State wishes to argue for an extension of *Rutledge*, it can do so at the appropriate time—when the merits of the defense are presented, and in federal court. The only question for removal is whether the defense is "wholly insubstantial and frivolous." *Latiolais*, 951 F.3d at 297. It is not, as multiple courts have held. *Puerto Rico*, 119 F.4th at 190; *Hunt*, 140 F.4th at 198–99; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *13–14.

## II.    THE STATE'S PURPORTED DISCLAIMER IS INEFFECTIVE.

The State also attempts to avoid removal by arguing that its Amended Petition "does not seek any sort of relief based on federal conduct committed by [Caremark] because the State's claims are limited to non-federal payments made by the State." Dkt. 23-1 at 12. The State does not cite language in its Amended Petition so limiting its claims, and for good reason: There is none. To the contrary, the State broadly characterizes its Amended Petition as challenging conduct that has allegedly "harmed Louisiana patients, independent pharmacies, and the public at large," without limitation. Am. Pet. ¶ 1. The State's purported disclaimer in its Motion to Remand is ineffective and fails to justify remand for several reasons.

To defeat removal, a disclaimer must (1) "*explicitly* renounce all claims that could support federal officer removal," (2) "eliminate *any* basis for federal officer removal," and (3) not be contradicted by allegations in the complaint that "seek[] to hold a defendant liable for federally connected conduct." *Mississippi v. Optum, Inc.*, 2025 WL 1622390, at *7 (S.D. Miss. June 9, 2025) (second emphasis in original) (citations omitted). Courts do not "blindly accept a plaintiff's purported disclaimer" and the "nonfederal cast of the complaint." *Hunt*, 140 F.4th at 195.[6] Instead, courts consider whether a disclaimer is "inconsistent with the allegations of the Complaint" because the

---

[6] *See also, e.g.*, *Boudreaux v. Bossier,* 2019 WL 11235896, at *2 (E.D. La. Oct. 25, 2019) ("boilerplate" disclaimers are ineffective to defeat removal); *Neal*, 495 F. Supp. 3d at 392 (ambiguous disclaimer that was not a binding stipulation not effective).

plaintiff continues to pursue relief based on the defendant's federal duties. *Dougherty v. A O Smith Corp.*, 2014 WL 3542243, at *3 (D. Del. July 16, 2014); *see also St. Charles II*, 990 F.3d at 451 (waivers may be ineffective where, as here, plaintiffs purport to disclaim seeking relief for federal conduct, but nevertheless continue to challenge the defendant's federal work). That analysis is particularly salient where, as here, the defendant "plausibly allege[s] that their federal and nonfederal work is indivisible," such that the plaintiff "cannot challenge their nonfederal work without also challenging their federal work." *Mississippi*, 2025 WL 1622390, at *3.

The State's purported disclaimer is "inconsistent with the allegations of the [Amended Petition]." *Dougherty*, 2014 WL 3542243, at *3. The Amended Petition does not even impliedly, let alone expressly, disavow claims related to FEHBA Carriers, nor does it limit the State's claims to payments made by the State in connection with State health plans. In fact, the State's purported disclaimer is not even internally consistent. The State asserts that its claims "are limited to non-federal payments made by the State," but then in the very next sentence states that "the relief sought is limited to direct costs incurred by the State *and its citizens*"—which would include federal employees. Dkt. 23-1 at 12 (emphasis added). The Ninth Circuit recently held that a similarly vague disclaimer by the State of California purporting to disavow any "challenges to and recovery from certain conduct undertaken by Caremark … in relation to … the Federal Employees Health Benefits Act" was insufficient. *See California*, 2024 WL 3770326, at *1. This Court should do the same.

Even if the State had expressly disclaimed any cause of action based on rebate negotiations for FEHBA Carriers, remand would not be warranted because it is not possible "to separate [Caremark's] federal conduct from its non-federal conduct." Dkt. 23-1 at 13. The State's core theory is that Caremark's rebate negotiations—which Caremark undertakes simultaneously on behalf of FEHBA and non-FEHBA clients, Perry Decl. ¶ 5—inflate the price of prescription drugs, *see* Am.

20

Pet. ¶ 34. In this very context, the First Circuit, Fourth Circuit, and MDL Court have flatly rejected the State's assertion that its disclaimer can support remand. *See Puerto Rico*, 119 F.4th at 191; *Hunt*, 140 F.4th at 196; *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *3–6.

As the First Circuit explained, the State "*necessarily* targets" Caremark's rebate negotiations for the federal government because Caremark negotiates rebates for FEHBA and non-FEHBA plans simultaneously: "[I]f Caremark is liable for its conduct in negotiating rebates for private clients and FEHBA plans, then it could be liable for its conduct under OPM's direction—no matter what the disclaimer says." *Puerto Rico*, 119 F.4th at 191–92. The Fourth Circuit reached the same conclusion. *Hunt*, 140 F.4th at 195–96 (disclaimer "changes nothing" because "complaint still seeks to hold the PBM liable for indivisible rebate negotiations"); *accord California*, 2024 WL 3770326, at *2 (Ikuta, J., concurring); *In re Insulin Pricing Litig.*, 2025 WL 1576940, at *3–6.

Without acknowledging these directly on-point precedents, the State asserts in a footnote that "[i]n the context of express disclaimers of federal claims, other [district] courts have rejected an indivisibility argument and remanded to the state court." Dkt. 23-1 at 13 n.4. None of the district court cases cited by the State are persuasive in the face of the contrary appellate authority. The Southern District of Ohio case relied upon the District of Puerto Rico's decision that was subsequently reversed by the First Circuit in *Puerto Rico. See Ohio ex rel. Yost v. Ascent Health Servs. LLC*, 2024 WL 23187, at *3 (S.D. Ohio Jan. 2, 2024). The District of Nevada decision does not address divisibility at all. *See Nevada*, 2025 WL 947041. And the District of Hawai'i decision, which is currently on appeal, evaluated an express disclaimer in the operative complaint that (unlike here) "limits the State's claims and recovery to non-federal health insurance and non-federal benefits programs" after previously holding that a disclaimer like Louisiana's which "focused on the relief sought by the State" failed to support remand even though (unlike here) the disclaimer was made in the operative

21

complaint. *Hawai'i*, 2025 WL 1218598, at *1, *10. The District of Hawai'i's divisibility holding also runs contrary to appellate precedent, including from the Fifth Circuit as well as the First and Fourth Circuits, holding that the Court "must 'credit' Caremark's 'theory of the case'" and "consider its [rebate negotiations] indivisible at this early juncture" because crediting the disclaimer would "trample a primary purpose of § 1442(a)(1): to have such defenses litigated in the federal courts." *Puerto Rico*, 119 F.4th at 192–94; *see also Maryland v. 3M Co.*, 130 F.4th 380, 389 (4th Cir. 2025) ("[W]e must credit a removing defendant's theory of the case as to whether the conduct with which it has been charged is related to its federal work."); *Kleinert*, 855 F.3d at 312; *accord Mississippi*, 2025 WL 1622390, at *7 (holding disclaimer ineffective and denying remand because court must credit defendant's plausible allegation of indivisibility).

The State also cites *Healthcare Venture Partners, LLC v. Anthem Blue Cross & Blue Shield*, 2021 WL 5194662, at *8 (S.D. Ohio Nov. 8, 2021), Dkt. 23-1 at 12. The case is inapposite because the plaintiff there sought payment of overdue benefit claims only for self-insured statewide plans and expressly disclaimed seeking payment relating to any FEHBA plans. *Healthcare Venture Partners*, 2021 WL 5194662, at *1, 8. By contrast, the State here raises broad challenges to Caremark's rebate negotiation practices generally, *see* Am. Pet. ¶¶ 33–34, which Caremark undertakes simultaneously on behalf of both FEHBA and non-FEHBA clients, Zahn Decl. ¶ 5.

## III. THE STATE'S SOVEREIGN STATUS DOES NOT CREATE AN EXCEPTION TO SECTION 1442(a)(1).

### A. The State's *Parens Patriae* Status Does Not Justify Remand.

The State next contends removal was inappropriate because it brings this case in its *parens patriae* capacity. *See* Dkt. 23-1 at 20–22. The State's *parens patriae* status is irrelevant to the removal analysis under section 1442(a)(1). *See Louisiana ex rel. Caldwell v. Allstate Ins. Co.*, 536 F.3d 418, 423–31 (5th Cir. 2008) (according no jurisdictional significance to the State's *parens*

*patriae* posture), *abrogated on other grounds by Mississippi ex rel. Hood v. AU Optronics Corp.*, 571 U.S. 161 (2014). Each of the State's arguments to the contrary is unavailing.

*First*, the State argues that, in bringing this claim *parens patriae*, it is not standing in the shoes of Louisianan citizens who may be FEHBA beneficiaries. *See* Dkt. 23-1 at 20–21. But the State concedes that its "*parens patriae* duty extends to the collective populace of Louisiana," Dkt. 23-1 at 20, which would include Louisianians who receive health coverage through FEHBA. Thus, regardless of the *remedy* the State seeks, the State is unquestionably challenging Caremark's federal *conduct*. *See supra* Part I.C. Even if the State does not seek damages as a representative for individual Louisianans, the State does seek monetary relief "to compensate the consumers of Louisiana," including "restitution" for consumers' "out-of-pocket expenditures." Am. Pet. ¶¶ 49–50, 53A; *accord* Dkt. 23-1 at 12 (noting relief sought includes costs incurred by State's citizens). This necessarily includes payments made by FEHBA beneficiaries pursuant to FEHBA contracts. The State also seeks to enjoin the challenged conduct, *see* Am. Pet. ¶ 52, which includes Caremark's conduct in negotiating and obtaining rebates passed through to FEHBA plans, lowering costs for those plans and ultimately the Louisiana FEHBA beneficiaries they serve.

*Second*, the State says its sovereign status entitles it to a state forum. Dkt. 23-1 at 22–24. But section 1442(a)(1)'s central purpose is to allow federal officers to litigate federal defenses in federal court, preventing states from bringing lawsuits reflecting "local prejudice[s]" in "hostile state court[s]." *Watson*, 551 U.S. at 148, 150. Whatever sovereign interest the State claims to have in this case is equally (if not more) applicable to criminal prosecutions under state law. And state prosecutions of federal officers are the very heartland of section 1442(a)(1)'s protection. *See id.* at 148. The State fails to identify any case imposing a heightened burden for removal under section 1442(a)(1) of an action brought by a state. In that context, courts routinely apply the ordinary

(flexible) federal officer removal standard. *See, e.g.*, *Kleinert*, 855 F.3d at 312.

### B.    The State Is Not Entitled to Sovereign Immunity Here.

The State's attempt to invoke sovereign immunity as a separate basis for remand (Dkt. 23-1 at 22–24) also fails. The Eleventh Amendment provides: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted *against one of the United States* by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend XI (emphasis added). The text is clear that it applies to claims brought "against" states, not claims brought *by* states. Consistent with the text, the Fifth Circuit has observed that "[o]f course, the eleventh amendment is inapplicable where a state is a plaintiff." *Huber, Hunt & Nichols, Inc. v. Architectural Stone Co., Inc.*, 625 F.2d 22 (5th Cir. 1980). And the Supreme Court has acknowledged that claims brought by plaintiff states against parties otherwise entitled to a federal forum, "may … be brought in or removed to the [federal] courts." *Illinois v. Milwaukee*, 406 U.S. 91, 101 (1972).[7] The State's attempts to dodge this precedent are unavailing.

The State first incorrectly argues that the Third Circuit allowed a state to invoke sovereign immunity in *In re Flonase Antitrust Litigation*, 879 F.3d 61 (3d Cir. 2017). Dkt. 23-1 at 24 n.13. There, the state was an absent class member, not a plaintiff, and the court allowed the state to assert sovereign immunity because the private parties "sought an injunction against [the] state" as part of a settlement. *Id.* at 66. Here, Caremark is defending a suit brought by the State.

The State next says the Fifth Circuit has left open the question of whether state-initiated proceedings are categorically exempt from sovereign immunity. *See* Dkt. 23-1 at 24 n.13 (citing *In re Katrina Canal Litig. Breaches*, 524 F.3d 700, 711 (5th Cir. 2008)). *Katrina Canal* is

---

[7] *See also Ames v. Kansas*, 111 U.S. 449, 462 (1884) ("suit brought by a State in one of its own courts … can be removed"); *Caldwell*, 536 F.3d at 431 n.12 (collecting appellate authority); *accord* 14C Charles Alan Wright & Arthur R. Miller, *Fed. Prac. & Proc.* § 3721 (4th ed. 2023).

inapposite. There, the Fifth Circuit upheld removal to federal court under the Class Action Fairness Act ("CAFA"). *Id.* at 712. In doing so, the court declined to address whether the State could ever invoke sovereign immunity to bar removal of an action based "on diversity grounds under CAFA, rather than federal question jurisdiction," because the State had waived any claim of immunity by including a proposed class of private citizens as plaintiffs in the action. *Id.* at 711. Caremark removed this action based on federal officer removal, not diversity jurisdiction. And the Supreme Court has expressly rejected the assertion that federal officer removal would offend the state's sovereign status. *See Tennessee v. Davis*, 100 U.S. 257, 266–67 (1879) (holding "removal of cases arising under [federal] laws" was "no invasion of State domain"). Indeed, Congress enacted the federal officer removal statute to guarantee federal officers a federal forum even for cases initiated by states in state court and under state law. *See Watson*, 551 U.S. at 148, 150. The State's sweeping assertion that sovereign immunity can bar removal would render section 1442(a)(1)—and centuries of federal officer removal precedent—a dead letter.

Finally, the State points to a single district court decision, *Moore ex rel. Mississippi v. Abbott Laboratories, Inc.*, 900 F. Supp. 26 (S.D. Miss. 1995), that allowed a state plaintiff to avoid removal by asserting sovereign immunity. *See* Dkt. 23-1 at 24 n.13. That decision has been rejected by every court that has cited it,[8] and the only case it cited in support of its holding has been overruled, *see California ex rel. Lockyer v. Dynegy, Inc.*, 375 F.3d 831, 849 n.15 (9th Cir. 2004) (overruling *California v. Steelcase, Inc.*, 792 F. Supp. 84, 86 (C.D. Cal. 1992)).

## CONCLUSION

For the foregoing reasons, the State's Motion to Remand should be denied.

---

[8] *See, e.g.*, *In re MTBE*, 488 F.3d 112, 120 (2d Cir. 2007); *In re Oil Spill by Oil Rig Deepwater Horizon*, 747 F. Supp. 2d 704, 710 (E.D. La. 2010), *aff'd sub nom. In re Deepwater Horizon*, 745 F.3d 157 (5th Cir. 2014); *Virginia ex rel. Kilgore v. Bulgartabac Holding Grp.*, 360 F. Supp. 2d 791, 794–95 (E.D. Va. Mar. 3, 2005) (collecting cases rejecting *Abbott Laboratories*).

DATED: September 19, 2025

Respectfully submitted,

By: */s/Harry Rosenberg*

**PHELPS DUNBAR LLP**

Harry Rosenberg (Bar #11465)
Jeremy T. Grabill (Bar #34924)
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130
Telephone: 504-584-9219
Email: harry.rosenberg@phelps.com
            jeremy.grabill@phelps.com

James Walter Green (Bar #27812)
400 Convention Street, Suite 1100
Baton Rouge, Louisiana 70802
Telephone: 225-346-0285
Email: walt.green@phelps.com

**FOLEY & LARDNER LLP**

Michael D. Leffel
(*pro hac vice*, W.D. La. Temp. #915366)
150 East Gilman Street, Suite 5000
Madison, Wisconsin 53703
Telephone: 608-258-4216
Email: mleffel@foley.com

Anne-Louise T. Mittal
(*pro hac vice*, W.D. La. Temp. #918518)
777 East Wisconsin Avenue
Milwaukee, Wisconsin 53202
Telephone: 414-319-7215
Email: amittal@foley.com

*Counsel for Defendants CVS Health Corporation, CaremarkPCS Health, L.L.C., and Zinc Health Services, LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on September 19, 2025, I electronically filed the foregoing

**Memorandum of CaremarkPCS Health, L.L.C. in Opposition to Motion to Remand** with the

Clerk of the Court using the CM/ECF system and provided notice to counsel of all adverse parties.


*/s/Harry Rosenberg*           
Harry Rosenberg